**H.M.J. QUICK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 29A04–9503–CR–115.

Court of Appeals of Indiana.

Jan. 22, 1996.

Rehearing Denied March 14, 1996.

Gregory L. Caldwell, Noblesville, for Appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant H.M.J. Quick appeals his conviction of two counts of dealing in a schedule I controlled substance, a class B felony.[1]

We affirm in part and reverse and remand in part.

### ISSUES

The Defendant raises four issues for our review which we rephrase as: [2]

    1. Did the State present sufficient evidence of Quick's predisposition to sell a controlled substance to overcome his entrapment defense?

    2. Did Quick's convictions violate the prohibition against double jeopardy?

    3. Did the trial court err by refusing to give Quick's tendered instruction?

### FACTS AND PROCEDURAL HISTORY

In July, 1994, Indiana State Police Officer Michael Morris was assigned to work at the Grateful Dead concerts at Deer Creek Music Center as an undercover narcotics officer. On July 20, 1994, the disguised officer walked through the crowd and repeatedly said the word "dose." [3] Quick heard the officer and approached him. Quick asked Officer Morris: "Do you have it or do you want to buy it? Do you have it or do you need it?" (R. at 176). The officer replied that he needed it. When Quick asked how much the officer wanted, the officer replied that he wanted to

---

1. *See* IND.CODE 35–48–4–2 (1993).

2. Because we find that, given the charging information, Quick's two convictions violate the principles of double jeopardy, we do not address his argument regarding the sufficiency of the evidence to support the inference that he possessed the controlled substance with the intent to deliver.

3. "Dose" is a slang word for lysergic acid diethylamide (LSD) which the officer testified that he heard at another Grateful Dead concert. LSD is a schedule I controlled substance. *See* I.C. 35–48–2–4(d)(13).

buy "10 hits," that is, ten doses of the substance. (R. at 176). Quick told the officer that he could sell him that amount for $30.00. Quick also told the officer about the quality and type of LSD he carried.

Quick then asked the officer to move over by a nearby pond to complete the transaction. The two men moved towards the pond and sat in the grass. Quick removed a black container from a fanny pack he wore around his waist. When he opened the container, the officer saw a substantial amount of what appeared to be blotter-type LSD. Quick tore off ten small squares of the blotter paper, handed it to the officer, and took the $30.00.

Shortly thereafter, Quick was arrested. During the arrest, Quick threw the black container into the pond; however, the container was immediately retrieved by a police informant. After the arrest, Quick was found to be in possession of 340 units of suspected LSD.

The ten dosage units purchased from Officer Morris as well as the contents of the black container were sent to the Indiana State Police laboratory for analysis. Both the units purchased by the officer and two sheets of the remaining blotter paper were tested and found to contain LSD.

After a jury trial, Quick was found guilty of two counts of dealing in a scheduled I controlled substance. He now appeals.

### DISCUSSION AND DECISION

### I.

Quick contends that the State presented insufficient evidence of his predisposition to sell a controlled substance to overcome his entrapment defense. We do not agree.

■ I.C. 35–41–3–9 defines the defense of entrapment as follows:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

The defense of entrapment is raised once there is evidence that police were involved in the criminal activity. *Young v. State* (1993), Ind.App., 620 N.E.2d 21, 24, *trans. denied.* Once the defense is raised, the State bears the burden of showing that the defendant was predisposed to commit the crime and that the level of police activity did not persuasively affect the free will of the accused. *Dockery v. State* (1994), Ind., 644 N.E.2d 573, 577. Factors which indicate a predisposition to sell drugs include a knowledge of drug prices and the use and understanding of terminology of the drug market. *Young,* 620 N.E.2d at 24.

■ In the case before us, the evidence produced at trial indicates that Quick's sale of LSD to Officer Morris was not the product of entrapment. The facts of Quick's transaction do not fit the statutory definition of entrapment. Officer Morris's only action prior to meeting with Quick was to walk through the crowd and repeat the word "dose." This action was not persuasive; rather, it provided the opportunity to anyone who was disposed to engage in a drug transaction with the officer. Thus, Officer Morris's conduct does not constitute entrapment pursuant to I.C. 35–41–3–9(b).

Further, the record reveals that Quick approached Officer Morris. The officer did not focus on Quick in any way. Quick understood the slang word which Officer Morris repeated, and immediately initiated the transaction by asking the officer if he wanted to buy or sell. Quick also understood the term "hit" when the officer stated that he wanted to purchase ten "hits." In addition, Quick was aware of the common price for a dose of LSD. He sold ten units of the drug for $30.00, a price which the officer testified was average.

■ From these facts, it can be inferred that Quick was not coerced into selling LSD to Officer Morris and the officer's conduct

did not constitute entrapment.[4]

## II.

Quick was charged and convicted of two counts of dealing in a schedule I controlled substance. He asserts that each count relies on the same evidence: that he possessed LSD, and that he delivered LSD to Officer Morris. However, in count I, Quick was charged with delivering LSD to Officer Morris, and in count II, he was charged with possessing LSD with the intent to deliver the drug. Thus, Quick is incorrect that both convictions rely on the same evidence; however, Quick is correct that, in this case, his convictions raise issues of double jeopardy.

■ Possession of a narcotic drug is an inherently included lesser offense of dealing that drug, and a defendant generally may not be convicted and sentenced separately for both dealing and possession of the same drug. *Mason v. State* (1989), Ind., 532 N.E.2d 1169, 1172, *cert. denied,* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428; *Abron v. State* (1992), Ind.App., 591 N.E.2d 634, 636, *trans. denied.* However, when a defendant is charged with possession of a drug different from the drug that is delivered, two separate convictions may be entered if the dealing and possession charges are specifically based only on the respective quantities. *Collins v. State* (1988), Ind., 520 N.E.2d 1258, 1260; *see also Morgan v. State* (1995), Ind. App., 648 N.E.2d 1164, 1173; *Reynolds/Herr v. State* (1991), Ind.App., 582 N.E.2d 833, 839. Thus, separate convictions for dealing and possession based upon a single sale of narcotics may be sustained, but to do so the State must make clear that only the quantity sold forms the basis of the dealing charge, while only the quantity retained after the sale forms the basis of the possession charge. *Johnson v. State,* (Ind.App., filed Dec. 29, 1995), No. 49A02–CR–561, slip op. at 8. If this is not made clear, proof that a defendant delivered drugs could also form the basis for

proving that he first possessed them, allowing a defendant to be convicted twice for possession and dealing the same drug, a result forbidden by our case law. *Id.; Mason,* 532 N.E.2d at 1172.

■ In the present case, count I charged Quick with dealing based upon his delivery of LSD to Officer Morris; count II charged Quick with possession of LSD with intent to deliver. No distinction whatsoever as to which LSD Quick is accused of dealing and which he is accused of possessing is indicated by the charging document. Thus, the State has not separated the dealing and possession charges adequately to sustain the separate convictions. Quick cannot be convicted and sentenced for dealing and possession with intent to deliver in this case.

## III.

Finally, Quick contends that the trial court erred when it refused to give a tendered instruction which described the penalty for a class B felony. We do not agree.

■ Quick neglects to provide any citation to authority in support of his claim nor any cogent argument on the issue. Thus, consideration of this issue has been waived. App.R. 8.3(A)(7); *J.L.,* 633 N.E.2d at 303. Notwithstanding waiver, our supreme court has consistently held that the jury plays no role in the sentencing of defendants and thus any possible penalty faced by a particular defendant is irrelevant for a jury's consideration. *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 295; *Wisehart v. State* (1985), Ind., 484 N.E.2d 949, 953, *reh'g. denied, cert. denied,* (1986) 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556. A trial court does not err when it refuses to provide such information to a jury. *Salahuddin,* 492 N.E.2d at 295. Thus, the trial court did not err when it refused to give Quick's tendered instruction regarding the possible sentence Quick faced if he was convicted.

4. Quick seems to argue that because the police did not have him under surveillance, did not have a warrant for his arrest, did not know his name, or did not seek a drug transaction with him specifically should "diminish or even disprove" his predisposition to commit the offense. Appellant's Brief at 13. However, Quick ne-

glects to provide any citation to authority in support of his claim nor any cogent argument on the issue. Therefore, consideration of this issue has been waived. Ind. Appellate Rule 8.3(A)(7); *J.L. v. Mortell* (1994), Ind.App., 633 N.E.2d 300, 303, *trans. denied.*

## CONCLUSION

We reverse and remand with instruction to vacate the judgment of conviction and sentence for count II, dealing in a controlled substance. We affirm on all other grounds.

SHARPNACK, C.J., and NAJAM, J., concur.