# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| STUART BOOKWALTER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 79A04-1402-CR-69 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1301-FA-2

**December 9, 2014**

**OPINION- FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Stuart Bookwalter ("Bookwalter") was convicted after a jury trial of Dealing in a Narcotic Drug, as a Class A felony;[1] Possession of a Narcotic Drug, as a Class C felony;[2] Possession of a Syringe, as a Class D felony;[3] and Possession of Paraphernalia, as a Class A misdemeanor.[4] Bookwalter was also adjudicated to be a habitual substance offender.[5] He now appeals.

We affirm in part, reverse in part, and remand.[6]

## Issues

Bookwalter presents several issues for our review, which we reorder and restate as:

I.  Whether there was sufficient evidence to support Bookwalter's conviction for Possession of a Syringe;

II.  Whether there was sufficient evidence to support Bookwalter's conviction for Dealing in a Narcotic Drug; and

III.  Whether Bookwalter's convictions for Dealing in a Narcotic Drug and Possession of a Narcotic Drug were barred on double jeopardy grounds.

---

[1] Ind. Code § 35-48-4-1(b)(1) (West 2013). In light of the significant revisions to the Indiana Code effective July 1, 2014, all statutory citations to substantive criminal provisions refer to the versions of these statutes effective at the time of the trial-level proceedings.

[2] I.C. § 35-48-4-6(b)(1)(A).

[3] I.C. § 16-42-19-18.

[4] I.C. § 35-48-4-8.3(a)(1).

[5] I.C. § 35-50-2-10(b).

[6] We heard oral argument on this matter on November 17, 2014. We thank both parties for their able advocacy.

## Facts and Procedural History

On January 17, 2013, acting on information obtained from a confidential informant, Lafayette Police Department officers were monitoring Bookwalter's travel from the Chicago, Illinois area. On the afternoon of that day, Bookwalter was observed by police traveling back from Illinois into Lafayette.

Police followed Bookwalter's vehicle to an AOK Campground in Lafayette. Troy Cudworth ("Cudworth"), a friend of Bookwalter's, lived at the campground with an uncle. Bookwalter had sent a text message to Cudworth offering Cudworth some heroin. Cudworth agreed and met Bookwalter in the parking lot.

Bookwalter and Cudworth were preparing to inject some of the heroin Bookwalter had purchased when police approached the vehicle. An officer saw Bookwalter's left hand reaching down and arrested the two men. A search of Bookwalter's vehicle recovered a total of 18 grams of heroin and several syringes. A search of Bookwalter's person recovered, from his left pocket, an eyeglasses case that contained various items used to consume heroin.

On January 24, 2013, the State charged Bookwalter with Dealing in a Narcotic Drug, Possession of a Narcotic Drug, Possession of a Syringe, and Possession of Paraphernalia. The State also filed an information alleging Bookwalter to be a habitual substance offender.

A jury trial was conducted on November 5 and 6, 2013. At the conclusion of the trial, the jury found Bookwalter guilty of Dealing in a Narcotic Drug, Possession of a Narcotic Drug, Possession of a Syringe, and Possession of Paraphernalia, as charged. Bookwalter waived trial and admitted his status as a habitual substance offender.

3

On February 3, 2014, the trial court entered judgments of conviction and a finding that Bookwalter was a habitual substance offender. The court sentenced Bookwalter to an aggregate term of twenty-three years imprisonment.

This appeal ensued.

**Discussion and Decision**

Possession of a Syringe

Bookwalter's first contention on appeal is that there was insufficient evidence to support his conviction for Possession of a Syringe, because the evidence showed he intended to inject heroin as opposed to a legend drug.

Our standard of review in challenges to the sufficiency of evidence is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. at 147 (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

To convict Bookwalter of Possession of a Syringe, as charged, the State was required to prove beyond a reasonable doubt that Bookwalter possessed, with intent to violate Chapter 16-42-19 of the Indiana Code ("the Legend Drug Act" or "the Act"), a hypodermic syringe or

4

needle or an instrument adapted for the use of a legend drug by injection in a human being. See I.C. § 16-42-19-18.

Bookwalter's challenge to his conviction centers on whether there was sufficient evidence that he possessed the syringes with intent to violate the terms of the Act. Bookwalter concedes that he possessed syringes with intent to inject himself with heroin. But Bookwalter contends that because heroin is a scheduled narcotic but not a legend drug as defined by the Indiana Code, he did not violate the Act, and his conviction for Possession of a Syringe must be reversed.

Thus, Bookwalter's challenge to his conviction raises a question of statutory construction.

> The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. Bartlett v. State, 711 N.E.2d 497, 501 (Ind. 1999) (citing Smith v. State, 675 N.E.2d 693, 696 (Ind. 1996)) (citing in turn Freeman v. State, 658 N.E.2d 68, 70 (Ind. 1995)). "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." Id.

Chambliss v. State, 746 N.E.2d 73, 77 (Ind. 2001).

In interpreting criminal statutes, when appropriate we apply the rule of lenity. Under the rule of lenity, "penal statutes [must] be construed strictly against the State and any ambiguities resolved in favor of the accused." Meredith v. State, 906 N.E.2d 867, 872 (Ind. 2009) (citations and quotations omitted). However, "statutes are not to be overly narrowed so as to exclude cases they fairly cover." Id.

5

Indiana Code section 16-42-19-18, under which Bookwalter was tried and convicted, provides: "A person may not possess or have under control with intent to violate this chapter [the Legend Drug Act] a hypodermic syringe or needle or an instrument adapted for the use of a legend drug by injection in a human being." This provision is part of the Indiana Legend Drug Act, I.C. § 16-42-19-1, et seq., which was enacted to supplement the provisions of existing legislation related to the regulation of food and drugs in Indiana. I.C. § 16-42-19-1. The Act criminalizes the sale or possession of certain substances—legend drugs,[7] insulin, and anabolic steroids—without a prescription. The question now before us distills to whether possession of a syringe without a valid prescription for a legend drug, insulin, or anabolic steroids, with intent to inject a non-legend drug, is sufficient to violate Section 16-42-19-18 of the Act. Bookwalter contends that it is not.

The requisite intent for the State to obtain a conviction under Section 16-42-19-18 is expressed not as intent to inject any drug, or even to inject an unprescribed legend drug, but as intent to violate the Act itself. We must, then, construe the statute to determine what satisfies the intent element of Section 16-42-19-18.

Our examination of the text of the Act does not clarify the nature of the intent requirement in Section 16-42-19-18. Section 16-42-19-13 of the Act provides that "A person may not possess or use a legend drug or a precursor unless the person obtains the drug … on the prescription or drug order of a practitioner" or under certain statutory exceptions. Section 16-42-19-17 criminalizes possession or having under control "with intent to violate the

---

[7] A legend drug is a drug "subject to 21 U.S.C. 353(b)(1)" or listed in certain documents published by the United States Department of Health and Human Services. I.C. § 16-18-2-199.

chapter an instrument or contrivance designed or generally used in smoking a legend drug." Other sections prohibit making false or fraudulent representations to obtain legend drugs, I.C. § 16-42-19-16, selling insulin to individuals without prescriptions, I.C. § 16-42-19-29, and supplying anabolic steroids for athletic purposes. I.C. § 16-42-19-25(a). As we noted above, the expressed purpose of the Legend Drug Act is to supplement Indiana's statutory scheme related to food, drug, and cosmetics safety, and most provisions of the Act pertain to the use of legend drugs, insulin, and anabolic steroids. Without reference to the use of a legend drug, insulin, or anabolic steroids, we cannot discern what it means to intend to violate the Legend Drug Act.

Recognizing this ambiguity, the State makes the creative argument that "intent to violate this chapter" means an intent to use a syringe in any manner not consistent with the Legend Drug Act. That is to say, the State contends that intent to violate the Legend Drug Act means an intent to act contrary to the Legend Drug Act. The rule of lenity does not, we think, favor such an expansive interpretation of the statute.

The State observed at oral argument that a predecessor statute, the Dangerous Drug Act, criminalized possession of a syringe with intent to violate that act, under the definitions of which heroin was classified as a dangerous drug. See I.C. §§ 16-6-8-2(j) & 16-6-8-3(h) (Burns 1973). That law was subsequently revised as the Legend Drug Act, and the offense of possession of a syringe was amended to pertain to intent to violate the Legend Drug Act under its changed terms, which did not include heroin as a legend drug. I.C. §§ 16-6-8-2(j) & 16-6-8-3(h) (Burns 1973 Supp. 1982). The State's reference to this change proves too much:

7

the legislature's revision of the Legend Drug Act to exclude from its scope heroin weighs in favor of concluding that the Act is at best ambiguous as to whether possession of a syringe with intent to inject heroin is a criminal act under Section 16-42-19-18.

Given the Act's ambiguity as to whether intent to inject any substance that is not also a legend drug, insulin, or anabolic steroid is within the scope of Section 16-42-19-18's intent element, we must construe the statute in favor of Bookwalter to conclude that intent to inject heroin is *not* fairly covered by the Legend Drug Act's definition of the offense of possession of a syringe.

Also in support of its position, the State in its brief directs our attention to Cherry v. State, 971 N.E.2d 726 (Ind. Ct. App. 2012), trans. denied, for the proposition that this Court has already interpreted Section 16-42-19-18 as including within its scope actions like Bookwalter's. The State further contends that our legislature's subsequent revision of the criminal statutes, which significantly reclassified drug offenses but did not address the holding in Cherry, amounts to legislative acquiescence to the Cherry Court's holding. Yet the Cherry Court does not appear to have been squarely confronted with the question of whether the offense of possession of a syringe, under which Cherry was convicted, was vague as to Cherry. Rather, the Cherry Court reached only the matter of sufficiency of the evidence without regard to the question of statutory construction with which Bookwalter frames his appeal. We conclude, then, that Cherry is inapposite because it did not undertake an analysis of the statute on vagueness grounds, and as a result there was no legislative acquiescence to the Cherry Court's interpretation of Section 16-42-19-18.

Finally, the State contends that at trial Bookwalter effectively conceded that he had committed the offense of Possession of a Syringe as defined under Section 16-42-19-18. Our review of the record does not reveal statements that comport with the State's assertion. Bookwalter admitted at trial that he possessed syringes with which he intended to inject heroin. He did not, however, admit any intent to violate the provisions of the Legend Drug Act, as required by the statute, and there is no evidence that indicates anything other than that Bookwalter intended to use the syringes to inject heroin. We thus cannot accept the State's argument that Bookwalter admitted to having committed the offense of Possession of a Syringe—though his admissions clearly support his conviction for the separately-charged offense of Possession of Paraphernalia.

Having concluded that Section 16-42-19-18 does not fairly encompass within its language Bookwalter's intended use of the syringe to inject heroin, we reverse Bookwalter's conviction for that offense.

### Dealing in a Narcotic Drug

We turn next to Bookwalter's contention that there was insufficient evidence of his intent to deliver heroin, and thus his conviction for Dealing in a Narcotic Drug should be reversed.

To convict Bookwalter of Dealing in a Narcotic Drug, as a Class A felony, as charged, the State was required to prove beyond a reasonable doubt that Bookwalter knowingly or intentionally possessed, with intent to deliver, heroin, pure or unadulterated, in an amount of three grams or more. See I.C. §§ 35-48-4-1(a)(2) & (b)(1) (West 2013). Bookwalter

9

contends that the State failed to carry its burden of proof because it did not "show that Bookwalter intended to deliver three or more grams of heroin." (Appellant's Br. at 14.)

We disagree. The State was required to prove that Bookwalter possessed heroin with intent to deliver it. I.C. § 35-48-4-1(a). Enhancement of the offense to a Class A felony required that "the amount of the drug involved" weighed three or more grams. I.C. § 35-48-4-1(b)(1). The enhancement was specified in a separate subsection of the statute, and does not by its terms require proof of intent to deliver a specific weight of drugs. Thus, the statute did not require that the State prove that Bookwalter intended to deliver a certain minimum amount of the drug to others. Rather, it required that Bookwalter possessed the drug, did so with intent to deliver some portion of the amount, and that the total amount possessed ("involved" in the offense) was greater than three grams.

Bookwalter concedes that he possessed heroin in an amount greater than three grams. He further concedes that he delivered some amount of heroin to Cudworth. This alone is sufficient to establish that Bookwalter possessed more than 3 grams of heroin with the intent to deliver some amount of the drug. Moreover, the total amount of heroin possessed—nearly eighteen grams—in comparison to Cudworth's testimony that the average dose size was approximately .10 grams, indicates that Bookwalter possessed enough heroin to deliver as many as 180 doses. (Tr. at 69.) Taken together with the reasonable inferences that favor the verdict, we conclude there was sufficient evidence from which the jury could convict Bookwalter of Dealing in a Narcotic Drug, as a Class A felony.

We turn now to Bookwalter's final contention on appeal, that his conviction for both Dealing in a Narcotic Drug and Possession of a Narcotic Drug violates double jeopardy principles. The State, for its part, agrees.

The Indiana Constitution provides in part, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. Two offenses are the "same offense" and violate the double jeopardy clause of the Indiana Constitution if, with respect either to the statutory elements of the challenged crimes or the actual evidence used to convict the defendant of the offenses, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Spivey v. State, 761 N.E.2d 831, 832 (Ind. 2002). The latter of these forms of double jeopardy is termed the "actual evidence test." Id. "Possession of a narcotic drug is an inherently included lesser offense of dealing that drug, and a defendant generally may not be convicted and sentenced separately for both dealing and possession of the same drug," unless "the dealing and possession charges are specifically based only on the respective quantities." Quick v. State, 660 N.E.2d 598, 601 (Ind. Ct. App. 1996) (citing, inter alia, Mason v. State, 532 N.E.2d 1169, 1172 (Ind. 1989), cert. denied).

Here, Bookwalter was convicted of both Dealing in a Narcotic Drug and Possession of a Narcotic Drug. Both convictions arise from the same evidence: that on January 17, 2013, Bookwalter knowingly or intentionally possessed heroin. The charging information does not distinguish quantities as required by Quick. Accordingly, we conclude that Bookwalter's convictions for both Dealing and Possession of a Narcotic Drug constitute double jeopardy.

11

The trial court need not undertake a full sentencing reevaluation, however, as vacation of the lesser included offense in this case will leave in place the trial court's aggregate twenty-three year sentence. See Richardson v. State, 717 N.E.2d 32, 54-55 (Ind. 1999).

Having already affirmed the judgment of the court as to Dealing in a Narcotic Drug, we remand the case with instructions to the trial court to vacate Bookwalter's conviction for the lesser included offense of Possession of a Narcotic Drug.

**Conclusion**

The Legend Drug Act provision under which Bookwalter was convicted is vague as to Bookwalter's conduct, and we accordingly reverse his conviction for Possession of a Syringe. There was sufficient evidence to sustain Bookwalter's conviction for Dealing in a Narcotic Drug, as a Class A felony. Bookwalter's convictions for Dealing in a Narcotic Drug and Possession of a Narcotic Drug violate double jeopardy principles, and we accordingly reverse the trial court and remand with instructions to vacate the conviction of Possession of a Narcotic Drug.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and PYLE, J., concur.