J.L. SPIVEY, Jr., Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 41S00–0002–CR–76.

Supreme Court of Indiana.

Jan. 29, 2002.

John P. Wilson, Greenwood, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

A jury found the defendant, J.L. Spivey, guilty of murder (felony murder),[1] burglary as a class A felony,[2] and conspiracy to commit burglary[3] in connection with the death of John Hughes in Greenwood, Indiana, in June of 1997. Finding that Count II, charging burglary "must be merged" into Count I, charging felony murder, the trial court only imposed sentences for the defendant's convictions for murder and conspiracy to commit burglary. Record at 310, 326. This direct appeal presents two claims: 1) that the defendant's convictions violate the Double Jeopardy Clause of the Indiana Constitution and 2) that the trial court erred in limiting cross-examination. We affirm his convictions.

### Indiana Double Jeopardy Clause

The defendant's first contention is that his convictions and sentences for murder and conspiracy to commit burglary violate the Indiana Double Jeopardy Clause, Article 1, Section 14 of the Indiana Constitution, as explicated in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). The defendant claims that under the actual evidence test he may not be properly convicted of felony murder and conspiracy to commit a felony when the two offenses share an element. In this case the underlying felony for felony murder was burglary, and the overt act in the conspiracy referred to elements of the same burglary. The defendant argues that, applying the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is violated because the jury used the evidence of breaking and entering with intent to commit theft to prove common elements of both conspiracy to commit burglary and felony murder.

In *Richardson*, we reviewed the history of the Indiana Constitution's Double Jeopardy Clause to ascertain and articulate a single comprehensive rule synthesizing and superseding previous formulations and exceptions. We explained that two offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49. In the present case the defendant claims a violation of the Indiana Double Jeopardy Clause not under the statutory elements test but under the actual evidence test. To show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination. *Richardson*, 717 N.E.2d at 54 n. 48; *see, e.g., Burnett v. State*, 736 N.E.2d 259, 262–63 (Ind.2000). The *Richardson* actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims. The language ex-

---

**1.** Ind.Code § 35–42–1–1(2).

**2.** Ind.Code § 35–43–2–1.

**3.** Ind.Code § 35–41–5–2; Ind.Code § 35–43–2–1.

pressing the actual evidence test explicitly requires evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish *the essential elements* of a second challenged offense. The test is *not* merely whether the evidentiary facts used to establish *one* of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Application of this principle has been articulated in different ways. *Compare Richardson,* 717 N.E.2d at 54 ("the defendant has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery"), *with Chapman v. State,* 719 N.E.2d 1232, 1234 (Ind.1999) ("the same evidence used by the jury to establish the essential elements of murder was also in-

cluded among the evidence establishing the essential elements of robbery as a Class A felony").[4]

■ Although denying any connection with the death of Hughes, the defendant at trial admitted conspiracy to commit burglary and commission of the burglary. Record at 1124–25, 1411. The jury was instructed that to find the defendant guilty of the murder charge, the evidence must prove that the defendant or his accomplice killed Hughes while committing or attempting to commit burglary, which was defined as the breaking and entering of a building of another person with the intent to commit a felony therein. Record at 216–17 (Court's Final Instructions 10 & 11). As to the charge of conspiracy to commit burglary, the jury instructions permitted the jury to understand that the overt act element could be either the completed burglary or only the breaking and entering, but the killing of Hughes was not identified as a possible overt act.[5] The evidentiary facts proving the essential elements of felony murder established that Hughes was killed in the course of the defendant's commission of burglary. Although these same facts thus established the essential elements of burglary, they

---

**4.** *See also Lowrimore v. State,* 728 N.E.2d 860, 868–69 (Ind.2000) ("[T]he jury used the same evidentiary facts ... to prove both the murder charge and the criminal confinement charge."); *Wise v. State,* 719 N.E.2d 1192, 1201 (Ind.1999) ("[T]he same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of arson as a Class A felony, and the two cannot stand."); *Hampton v. State,* 719 N.E.2d 803, 809 (Ind.1999) ("The same evidence that supported the murder conviction, the act of stabbing, may have also been used to convict Defendant of robbery as a Class A felony.").

**5.** The final instructions advised the jury of the content of the charging informations for all counts, including the charging information on the conspiracy count which, as to the overt

act element, alleged "and in furtherance of said agreement J.L. Spivey did break and enter the dwelling of John W. Hughes with the intent to commit a felony, to-wit: theft." Record at 210 (Court's Final Instruction 4). In setting out the elements and burden of proof as to the conspiracy count, the court instructed the jury that, to convict the defendant under Count III, charging conspiracy to commit burglary, the State must have proved the following elements: that the defendant agreed with Jason Singleton to commit the crime of burglary, with the intent to commit the crime, and that the defendant or Singleton "performed an overt act in furtherance of the agreement by breaking and entering the home of John Hughes...." Record at 221 (Court's Instruction 16).

did not also prove the agreement element of conspiracy. Similarly, the evidentiary facts used by the jury to establish that the defendant committed conspiracy to commit burglary, although including proof of breaking and entering and intent to commit a felony, did not also establish that Hughes was killed during the burglary. Thus, although the evidence proving each offense also proved some elements of a second offense, in neither case did the same evidentiary facts establish all of the essential elements of both offenses. In other words, the offenses of felony-murder and conspiracy were each established by the proof of a fact not used to establish the other offense.[6] The defendant has thus failed to demonstrate a violation of the Indiana Double Jeopardy Clause under the *Richardson* actual evidence test.

As we hold today in *Pierce v. State*, 761 N.E.2d 826, 829–30 (Ind.2001), this Court continues to recognize a series of rules of statutory construction and common law that are separate and in addition to the protections afforded by the Indiana Double Jeopardy Clause. However, the defendant's convictions for felony-murder and conspiracy to commit burglary do not qualify for relief under these rules.

Justice Sullivan has urged that an offender should not be punished for the crime of conspiracy where the overt act element of conspiracy "is the very same act as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring). He explains that this rule is required to assure that "the conspiracy is a separate and distinct act from the under-

lying crime." *Id.* Here, the conspiracy to commit burglary is sufficiently distinct from the offense of felony-murder. As an overt act of the conspiracy, the burglary was completed when the defendant entered the residence of John Hughes with the intent to commit theft. The defendant was not convicted and sentenced for burglary because the trial court merged the burglary count into the murder count. The defendant's crime of murder, however, required not only the burglary but also the death of Hughes, which is not part of the overt act for the conspiracy to commit burglary. Thus the overt act was not the same as the crime of murder, and the offenses of conspiracy and murder are sufficiently distinct to permit the defendant to be separately convicted and punished for each.

We find no error under the Indiana Double Jeopardy Clause or under any rules of statutory construction and common law.

### Limitation on Cross–Examination

The defendant's second contention is that the trial court abused its discretion in limiting the scope of cross-examination of two witnesses. The defendant asserts, "[T]he events which resulted in the death of John Hughes had occurred subsequent to the burglary and after the Defendant, Spivey[,] had left the scene." Br. of Appellant Defendant at 28. He claimed at trial that the death was caused by a subsequent beating of Hughes inflicted by Jason Singleton, a relative of Carla Summers. The defendant argues that "[b]y its cross-examination of Carla Summers and [Jason] Singleton, the defense was trying to show that the motive for the *intentional* homi-

---

**6.** If there had been any possibility that the jury used the same evidentiary facts that established one offense to completely establish the other offense, the actual evidence test would then require us to determine whether this possibility was reasonable. If the possibility were only speculative or remote, there would be no violation of the Double Jeopardy Clause under the actual evidence test. *Griffin v. State*, 717 N.E.2d 73, 89 (Ind.1999).

cide was to cover up the involvement of Singleton in this crime and possibly to protect Carla Summers." *Id.* (emphasis in original).

The victim was John Hughes, an elderly man of 83 or 84 who lived alone in a mobile home. Carla Summers helped Hughes on a daily basis with basic everyday tasks. She cleaned, ran errands, took him to the doctor's office, and helped him in other similar ways. Singleton was a co-perpetrator in the charged crimes and a relative of Summers by marriage. It was through Summers that Singleton met the victim and became aware that there may be money kept in lockboxes in his kitchen. The defendant and Singleton went to the mobile home to steal the lockboxes. The defendant broke in through the locked door. At this point, the testimony of Singleton and the defendant diverges. Singleton stated that he watched the defendant go into the trailer and after a few moments, stepped inside to observe the defendant hitting the victim in the face with his fists. Singleton then left, and the defendant followed later with the boxes. On the other hand, the defendant testified that both he and Singleton went in the mobile home and, as they were carrying the boxes out, the victim awoke and stood up out of his chair. The defendant stated that he pushed or hit the victim back into his chair and then Singleton hit him in the chest with one of the lockboxes. The defendant stated that he left the home without Singleton and expressed his belief that Singleton intentionally killed Hughes after the defendant was no longer present. The next day, Summers discovered Hughes in his home, covered with blood and unable to speak. Paramedics transported him to the hospital, where he died five days later. The cause of death was blunt force injury to the head resulting in multiple head injuries.

Before trial, the court had granted the State's motion in limine seeking, among other things, to preclude evidence regarding prior charged and uncharged acts of Jason Singleton and Carla Summers that did not result in a conviction admissible under *Ashton v. Anderson,* 258 Ind. 51, 279 N.E.2d 210 (1972). This ruling was consistent with Indiana Evidence Rules 608(b) and 609(a) which generally prohibit a challenge to witness credibility by evidence of specific instances of conduct except for convictions of specific crimes or crimes involving dishonesty or false statement. At trial, the defendant properly presented offers to prove in support of his request for relief from the ruling.

The defendant sought to introduce evidence of dismissed charges that had been brought against Summers for a prior theft involving the victim. The defendant was also prevented from introducing evidence of an incident in which Singleton distracted the victim while Summers may have taken some money from the victim. The defendant contends that this evidence would have bolstered his theory that Singleton intentionally killed the victim to cover up his involvement in the current burglary and past thefts by Summers.

■ Even if the defendant were correct in this contention, the excluded evidence would not diminish the defendant's guilt under the charge of felony murder. The defendant's joint participation with Singleton in the class A felony burglary of Hughes renders the defendant guilty of murder for any killing while committing the burglary. *See Wieland v. State,* 736 N.E.2d 1198, 1202–03 (Ind.2000)(conviction for felony murder upheld for killing by accomplice during flight from robbery); *Palmer v. State,* 704 N.E.2d 124, 126 (Ind.1999)(felony conviction upheld for killing of accomplice by law enforcement); *Seeley v. State,* 544 N.E.2d 153, 156–57

(Ind.1989)(conviction for felony murder of victim intentionally killed by accomplice during escape); *Mauricio v. State,* 476 N.E.2d 88, 92 (Ind.1985)(conviction for felony murder where accomplice killed victim after defendant had already left scene on a snowmobile stolen from victim). *But cf. Kelly v. State,* 719 N.E.2d 391, 396 (Ind.1999)(upholding trial court's judgment on the evidence notwithstanding a jury verdict finding a defendant guilty of murder where sole evidence established that the killing was spontaneous after the defendant had left the scene).

■■■ If we were to disregard Evidence Rules 608 and 609, and hypothetically assume that the trial court improperly limited the defendant's cross-examination of Summers and Singleton, reversal would still not be warranted. Convictions will not be reversed "if the State can demonstrate 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Standifer v. State,* 718 N.E.2d 1107, 1110 (Ind.1999)(citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986), and quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967)). The jury was instructed:

> In proving felony murder, the State need show only that defendant intended to commit the underlying felony, not the intent to commit murder. A defendant may be convicted of felony murder even though it was his accomplice who killed the victim.

Record at 217 (Court's Final Instruction 11). Even viewing the evidence favorable to the defendant, it established that he participated in the burglary and that in the course of the burglary both the defendant and his accomplice struck the elderly victim who died as a result. In light of the information before the jury, the additional evidence of motive for Singleton is of little consequence. We conclude that the trial court did not err in limiting cross-examination, but even if it did, such error would be harmless beyond a reasonable doubt.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and BOEHM, J., concur.

RUCKER, J., concurs in part and dissents in part with separate opinion, in which SULLIVAN, J., joins.

RUCKER, Justice, concurring in part and dissenting in part.

I agree with the majority that Spivey's convictions for felony murder and conspiracy to commit burglary do not violate Indiana's Double Jeopardy Clause as articulated in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999). However, Indiana common law dictates that Spivey's conviction for conspiracy to commit burglary should be vacated.

In a unanimous opinion, we hold today that this Court has "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson.*" *Pierce v. State,* 761 N.E.2d 826, No. 49S00–0011–CR–710, 2002 WL 118263 (Ind. Jan. 29, 2002). It is true there is case authority standing for the proposition that a defendant may be convicted of both conspiracy to commit a felony and the underlying felony. *See, e.g., Griffin v. State,* 717 N.E.2d 73, 89 (Ind.1999) (robbery and conspiracy to commit robbery), *cert. denied,* 530 U.S. 1247, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000); *Witte v. State,* 550 N.E.2d 68, 71 (Ind.1990) (murder and conspiracy to commit murder); *Sparks v. State,* 537 N.E.2d 1179, 1184 (Ind.1989) (burglary and conspiracy to commit bur-

glary). However, consistent with today's holding in *Pierce*, this Court has not allowed to stand a conviction for conspiracy where the overt act that constitutes an element of the conspiracy is the same act as another crime for which the defendant has already been convicted. *See, e.g., Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind.1996) (agreeing that the defendant's convictions for both conspiracy to deal in cocaine and dealing in cocaine violated principles of double jeopardy because "the overt act in furtherance of the conspiracy could have been the same act as required to convict [the defendant] for dealing in cocaine."); *Buie v. State*, 633 N.E.2d 250, 261 (Ind.1994)[1] (holding that where the overt act element of a conspiracy charge is the underlying offense, convictions on both the conspiracy and underlying offense cannot stand); *Thompson v. State*, 259 Ind. 587, 290 N.E.2d 724, 727 (1972) (holding "that before the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct.").

In this case Spivey was charged with burglary, felony murder—with burglary alleged as the underlying felony, and conspiracy to commit burglary. The evidence shows and the State concedes that the only overt act supporting the conspiracy charge was the burglary itself. Although the trial court entered no sentence on the burglary conviction, that was not sufficient in my view. Left standing was the conspiracy

charge, the overt act for which Spivey has already been punished by reason of the felony murder conviction. If not under the *Richardson* double jeopardy test,[2] then under this Court's traditional common law scheme, the convictions for both felony murder and conspiracy cannot stand. I would therefore vacate Spivey's conviction for conspiracy to commit burglary. In all other respects I concur with the majority.

SULLIVAN, J., concurs.

---

1. Although *Buie* was explicitly said to be superceded in *Richardson*, 717 N.E.2d at 49 n. 36, only Justice Dickson and Chief Justice Shepard appear to have taken that view. Justice Sullivan concurred in *Richardson* but authored a separate opinion that cited *Buie* apparently with approval. *Id.* at 57 (Sullivan, J., concurring). The other two Justices did not comment on *Buie* but cited with approval other cases following additional common law doctrines.

2. Compare, for example, *Lundberg v. State*, 728 N.E.2d 852, 855 (Ind.2000) (applying *Richardson* and reversing the defendant's conviction for conspiracy to commit murder where it was "reasonably possible" that the evidence the jury relied on for murder—the defendant shot the victim—was the same evidence the jury relied upon to establish the overt act of the conspiracy).