## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 21 2019, 7:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew R. Falk
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Victoria M. Tidwell,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

June 21, 2019

Court of Appeals Case No.
18A-CR-1185

Appeal from the Hendricks
Superior Court

The Honorable Rhett M. Stuard,
Judge

Trial Court Cause No.
32D02-1706-CM-752

**Baker, Judge.**

[1] Victoria Tidwell appeals her convictions for Class A Misdemeanor Dog Bite Resulting in Serious Bodily Injury,[1] Class B Misdemeanor Harboring a Non-Immunized Dog,[2] and Class C Misdemeanor Dog Bite Resulting in Bodily Injury,[3] arguing that (1) the evidence was insufficient to support the dog bite convictions; and that (2) the dog bite convictions and the harboring a non-immunized dog convictions violate Indiana's prohibition against double jeopardy. Finding that the evidence was sufficient but that there was a double jeopardy violation, we affirm in part and reverse and remand in part with instructions.

# Facts

[2] Tidwell and her fiancé, James Hall, were living in Hendricks County with Tidwell's three dogs, Slush, Bear, and Oreo. Tidwell's landlord told her that the dogs had to remain outside, so Tidwell put the three dogs on a chain. However, in the winter of 2016, Tidwell installed a chain-link fence and placed stakes and boards around the fence's perimeter until she could afford to sink the fence posts in concrete. Tidwell hoped that this make-shift footing would prevent her three dogs from escaping. With the chain-link fence in place, Tidwell let her dogs roam free around her yard.

---

[1] Ind. Code §§ 15-20-1-4(a), -4(b)(2)(B).

[2] Ind. Code § 35-46-3-1.

[3] I.C. § 15-20-1-4(a).

[3] On May 18, 2017, with the concrete stakes not yet installed, Tidwell's three dogs escaped from her yard, despite Tidwell's claims that she had locked and secured the fence before she left for work that day. Marcia Wells, who was standing on her own sidewalk, noticed the three dogs approach her. The dogs started barking at Wells and eventually bit her on her left leg. Wells attempted to walk away, but the dogs bit her again. On the same day, another neighbor, Jack Singleton, was bitten by the dogs on his ear, knee, leg, and arm in his own yard. Like Wells, Singleton tried to evade the dogs by walking away, but he was bitten again. Singleton fell down and started crawling away in an attempt to escape.

[4] Hendricks County Sheriff's Department Deputy Justin Arnes, who was off-duty at the time, was running with his dog when he noticed Tidwell's dogs attacking Singleton. Deputy Arnes returned home to put his own dog in the garage before returning to assist Singleton, who was now bloodied. While Deputy Arnes was administering first aid, Tidwell's three dogs returned and started attacking and biting him.

[5] Hendricks County Animal Control (HCAC) Officer Kelly Manns responded to a report of multiple dog bite wounds. First, Officer Manns spoke with Wells, who confirmed that three dogs were loose and that she had been bitten. Officer Manns then called for an officer to help capture the dogs. HCAC Officer Brandon Keisker responded to the call and assisted Officer Manns, Deputy Arnes, and others with the task. Officer Keisker was able to capture one dog and put it back behind Tidwell's chain-link fence, but it immediately escaped.

Officer Keisker testified that the fence as he observed it "was not in good proper working order[,]" and "was really flimsy" with "no attachment to the ground." Tr. Vol. II p. 32. Tidwell and Hall returned home, identified themselves as the dogs' owners, and helped the group rein in the dogs. After roughly two to three hours, all three dogs were caught and placed in HCAC custody. Officer Manns called a veterinarian, who reported that all three dogs had either not been vaccinated, or if they had been vaccinated, that their vaccinations had expired.

[6] Deputy Arnes, Wells, and Singleton all went to the hospital to treat their wounds. Medical personnel had to sew Singleton's ear lobe back on, and Singleton testified more than a year later that the pain had not gone away. Deputy Arnes had to receive stitches for the bite wounds on his leg, and medical staff discovered that the dog bites pierced Wells's skin.

[7] On June 2, 2017, the State charged Tidwell with three counts of Class C misdemeanor dog bite resulting in bodily injury. On March 26, 2018, the State enhanced one of the Class C misdemeanor counts to Class A misdemeanor dog bite resulting in serious bodily injury. That same day, the State also charged Tidwell with three counts of Class B misdemeanor harboring a non-immunized dog. At Tidwell's April 6, 2018, bench trial, Tidwell admitted that she harbored non-immunized dogs. The trial court found Tidwell guilty as charged.

[8] The trial court then sentenced Tidwell to ninety days fully suspended and ordered her to serve 365 days of probation. On April 30, 2018, the trial court held a hearing to determine restitution for the victims' medical bills. During the

restitution hearing, Tidwell filed, and the trial court granted, a motion to stay any restitution order because she planned to appeal the trial court's jurisdiction to enter a restitution order given that it had already entered the sentencing order.

On November 26, 2018, this Court issued a memorandum decision finding that the trial court did, in fact, have jurisdiction to enter the restitution order and remanding for further proceedings. *Tidwell v. State*, Cause No. 18A-CR-00185, slip op. at 2 (Ind. Ct. App. Nov. 26, 2018). Following the rescheduled January 9, 2019, restitution hearing, the trial court ordered that Tidwell pay $940.50 in restitution to the victims. Tidwell now appeals.

# Discussion and Decision

# I. Sufficiency of Evidence

First, Tidwell argues that the evidence was insufficient to support her convictions for Class A and Class C misdemeanor dog bite causing bodily injury.

When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the

witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[12] To convict Tidwell of Class A misdemeanor dog bite resulting in serious bodily injury, the State was required to prove beyond a reasonable doubt that the owner recklessly, knowingly, or intentionally failed to take reasonable steps to restrain a dog; the dog entered property other than the property of the dog's owner; and as a result of the owner's failure to restrain the dog, the dog bit or attacked another person without provocation, resulting in serious bodily injury. I.C. §§ 15-20-1-4(a), -4(b)(2)(B). For Class C misdemeanor dog bite causing bodily injury, the State must prove the same elements beyond a reasonable doubt, except that it need only show that the failure to restrain resulted in regular—as opposed to serious—bodily injury. I.C. § 15-20-1-4(a).

[13] It is undisputed that Tidwell's dogs entered property other than the property of the dogs' owner, and as a result of the lack of restraint, the dogs bit and attacked people without provocation, resulting in serious bodily injury to Singleton—the Class A misdemeanor charge—and regular bodily injury to Wells and Deputy Arnes—the Class C misdemeanor charges. Tidwell only contends that the State failed to prove beyond a reasonable doubt that she recklessly or knowingly failed to take reasonable steps to restrain the dogs.[4]

---

[4] Both Tidwell and the State concede that Tidwell did not intentionally fail to restrain the dogs.

[14] "A person engages in conduct 'knowingly' if, when [she] engages in the conduct, [she] is aware of a high probability that [she] is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'recklessly' if [she] engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35-41-2-2(c). While there is little evidence to prove that Tidwell acted recklessly, the evidence was sufficient that a reasonable trier of fact could conclude that Tidwell knowingly failed to restrain her dogs.

[15] Pursuant to her landlord's demands, Tidwell kept her three dogs outside in her backyard. After keeping the dogs on a chain for some time, Tidwell decided to build a fence so her dogs could roam free. However, Tidwell did not have the money to root the chain-link fence in concrete. So, she placed make-shift stakes and footing around the base perimeter of the fence to prevent her dogs from escaping. This attempt at fencing and security did not work, and the evidence suggests that Tidwell knew it would not work.

[16] While attempting to capture the dogs during their biting spree, Officer Keisker testified that the fence as he observed it "was not in good proper working order[,]" and "was really flimsy" with "no attachment to the ground." Tr. Vol. II p. 32. Indeed, one of the dogs that Officer Keisker captured was able to escape immediately after he put it behind the fence. *See Boss v. State*, 964 N.E.2d 931, 936 (Ind. Ct. App. 2012) (holding that "obvious gaps through which [] dogs could escape" in a fenced-in area indicates a knowing failure to restrain). Furthermore, Tidwell admitted that the fence was not complete because she

could not afford to pay for the concrete that traditionally accompanies most chain-link fences. This evidence in the aggregate could lead a reasonable trier of fact to conclude that Tidwell was aware and had knowledge of the fact that the fence was not enough to control her three dogs. The trial court agreed and held, as follows:

> Uh, the definition of knowingly basically is that there's a high probability based on your conduct that, uh, that event will occur. I think the fact that she put boards and stakes around her fence actually indicates that she did have some knowledge that there's a high probability those dogs could get out and so, I think that element has been met.

Tr. Vol. II p. 79. In sum, the evidence is sufficient.[5]

# II. Double Jeopardy

[17]     Second, Tidwell argues that her separate convictions for dog bite causing bodily injury and harboring a non-immunized dog violate Indiana's prohibition against double jeopardy. We review questions of double jeopardy de novo, giving no consideration to the trial court's decision below. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

---

[5] Tidwell incorrectly argues that "the fact that there was no testimony that the dogs had ever escaped before, that they had ever been off the property, or that they had ever bitten anyone," appellant's br. p. 15, negates any claim that she knowingly or recklessly failed to restrain her dogs. The plain language of the statute does not require any proof of a previous dog bite, flight, or escape in order to convict.

[18]     The principle of double jeopardy prohibits the State from punishing a defendant twice for the same offense. *Mehidal v. State*, 623 N.E.2d 428, 434 (Ind. Ct. App. 1993); *see generally* Ind. Const. art. I, § 14. Moreover, a defendant cannot be subjected to a conviction or a sentence enhancement for the same behavior or act that was punished for another conviction. *Guyton v. State*, 771 N.E.2d 1141, 1142 (Ind. 2002). Tidwell contends that the trial court relied on the same facts to convict her of dog bite causing bodily injury and harboring a non-immunized dog since both convictions require evidence that the offender's actions resulted in bodily injury to another person, an essential element. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). The State concedes this issue, and we agree. *See Boss*, 964 N.E.2d at 937 (holding that defendant's convictions for dog bite resulting in serious bodily injury and harboring a non-immunized dog violated the prohibition against double jeopardy because there was a reasonable possibility that the separate convictions relied on the same evidentiary facts).

[19]     "When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation." *Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999). Accordingly, we remand this case to the trial court with instructions to reduce Tidwell's three Class B misdemeanor convictions to Class C misdemeanors since the Class C misdemeanor statute does not have a bodily injury element.

[20] The judgment of the trial court is affirmed in part and reversed and remanded in part with instructions.

Najam, J., and Robb, J., concur.